Good morning, Your Honors. Jason Carr appearing on behalf of Appellant Mr. Greer. There's nothing inherently wrong with the use of economic fear to obtain property. And that is a key element of this case. The fact that this is an economic fear extortion is vital to the determination of this court because it's a very unusual type crime. It's unusual because it encompasses this gray area between a very common transaction, transactions that are going on by the thousands the moment I'm speaking right here versus criminal activity. And where that line of demarcation is is in the mental state requirement for the offense. And I will note that there's not a lot of case law about economic fear extortion. In fact, there's not even a model jury instruction about it, which is significant from the Ninth Circuit, because it's not a crime that's charged very often. Well, I've never seen a case like this. No, I can tell you that I had to send my client multiple copies of the opening brief at the prison because everybody at the prison wanted to read the brief because they thought the case was so unusual. But anyway, so what this case boils down to and what this court needs to determine is what is the mental state requirement for economic fear extortion. And the Strum case lays it out about as well as I think that you could. And the confusion here, and the government I would respectfully submit fell into this confusion, is that the term wrongful use takes on a variety of components in this crime. There are essentially three elements, wrongful, use, economic fear. Economic fear is a given in this case. It's a given in virtually every business transaction that occurs. So that the meat of the offense is wrongful use. Am I correct that what he was doing, the nub of it was he was trying to sell the casino back its own trash? Essentially, yes. That had information that he said they didn't want to have in the wrong hands? Right. The secured fibers that the casinos contracted were supposed to shred these documents, and they didn't do it. And so when this truck was unloaded, as this usually happens, there's debris in the truck, and we went through the debris, which under trucking custom was now his, he found these sensitive documents. And he thought he essentially won the lottery. So if he'd go back and he'd extort this casino to pay him money for it. I object to the use of extort. Excuse me. Convinced. Yes. And your position is that he was not, that there was an inadequate instruction or what, that he didn't know that was wrong? Well, the key that this all boils down to, the jury needs to determine that Greer subjectively believed that his negotiation tactics in receiving money for turning over the documents was unlawful. Unlawful. It is a rare, it is very rare crime where the government has to subjectively prove that the defendant knew he was breaking the law. And you see the same, it's not totally unusual, it comes up a lot in tax prosecutions under a cheek. Same type of analysis. You can't be guilty of tax fraud unless you honestly subjectively believed that what you were doing was unlawful. Same in this circumstance. And Strom lays it out very clearly. And I understand that it's unusual. But it has to be unusual because of the nature of this crime. Because these economic transactions are occurring everywhere. Economic fear is being engendered everywhere. What makes it criminal is when a defendant wrongfully uses economic fear. And wrongful use has two components. A subjective component and an objective component. Now the government. Counsel, I'd like to take you back just a minute to something you said a minute ago about his use of the property. That is that the garbage that was left in his truck under trucking usage was his to use. Now when he calls his boss, Miss French, and says, I've got stuff left in the truck, can I have it? She asks what it is and he gives her an analogy. He doesn't tell her what he's got. He tells her, well, if I was taking grass seed and I end up with grass seed left in the truck, can I go and plant that in my front yard? She tells him yes. Now he's got 50 pounds of paper here, which contains very, very sensitive documents from casinos in Las Vegas. Social security numbers and so forth. Now it's one thing to say, can I take this paper and burn it in my fireplace for warmth? And another thing to say, I intend to take this paper and I intend to use the information that's found on that paper to my own purposes. But what makes him think that he's got the right to use the social security numbers and the information coming out of Harris and the MGM? It's a fascinating question. And it's interesting in this crime is you're asking the jury to make what is essentially a legal determination. And what your question is relevant, though, to both the objective and subjective proof the government has to establish to show wrongful use. The objective component here is, was it really unlawful under the general background of the law for Greer to obtain these documents and try to negotiate with them? That's one component the government has to prove is, was the wrongful means to obtain wrongful ends? That's part of extortion. Now the cases talk about how in economic fear extortion, the wrongful means doesn't really apply because wrongful means applies to when you use fears of violence or fear of violence. So in economic fear extortion, it's all about wrongful ends. Now that means, was it legally wrong for him to negotiate in the manner he did? I'm still trying to get – I think my question went back just a little bit – it was a little bit different. Under the rules of trucking, is it lawful, is it practice for truckers to be able to use the substantive information found on the paper as opposed to using the paper itself? Unclear. Why would he think that he could use Social Security numbers? It wasn't an insanity defense. Well, whether or not he thought that what he was doing was legal is, of course, a jury determination. Whether or not it is legal is also a jury determination, which is kind of strange, but in this case the jury made that determination. Right. The jury was properly instructed on the paper. Against your client. Excuse me? Against your client. Right. So if it's a jury determination that you lost, then what's the question? So I've lost two out of three elements, essentially. I've lost economic fear, I've lost objective wrongfulness, but I have not lost subjective wrongfulness because the jury was never instructed on that. He had to have subjectively believed that negotiating with the casinos in the manner in which he did and obtaining money from that negotiation was against the law. That is what Strom says. That is what the law has to be in this context or else you are going to – What was the instruction? I'm still – I still don't – What was the instruction that you offered that wasn't given? Well, we offered a claim of right instruction. So we were focusing on the objective aspect of wrongful use, not the mens rea subjective act. So that's why this is plain error, unfortunately. Isn't the problem that the court gave another instruction saying that he had to know that it was – or didn't have to know that it was wrongful? Yes. Yes. The three instructions in tandem – In the case? Yes, exactly. The three instructions at issue are on 549, 556, 624, the excerpt of record. These three instructions are almost identical to the three instructions given in Strom. And the three instructions in tandem effectively eliminated any mental state requirement for this offense. And what's interesting is the government has never – Why didn't they? Tell us about those. Okay. Let's look – if we look at 524, we'll see that the jury was instructed – 549, excuse me – that the jury was instructed that they needed to find that the defendant knew he was not entitled to receive money from Harris and MGM. Well, that's getting close to what the mental state requirement is. It isn't very clear, but arguably the government would have an issue there. Except for on 556, then the jury is instructed that the government is not required to prove that the defendant knew that his actions were unlawful. Now, go back to 549. That the defendant knew he was not entitled to receive the money. Knew in what way? In a way that's not tethered to the law? What would that be? What is that? That's no requirement at all. How could he know he was not entitled to receive money that had nothing to do with the law? That's what the jury was instructed. Well, it does strike me that he might realize that he didn't have the right to call MGM and tell them that he had social security numbers of their clients and customers with lots of personal information and he was going to auction it on eBay if they didn't hire him as a consultant. Yeah, that was his negotiation. He threatened them with economic fear. It strikes me as a very, very strange set of negotiations. And then to post it, actually post it on eBay and tell them there it is on eBay, you know, I need $250,000 plus a $100,000 poker stake. That's unclear, Your Honor, about the $100,000 poker stake. The government just kind of came up with that. I'm not really sure that's in the record, by the way. Okay. But it's a half million he was looking for. I'd like to reserve the remaining 50 seconds. Yeah, okay. We'll give you 20 seconds. Okay. You may proceed. May it please the Court. Peter Levitt for the United States. Your Honors have focused on the appropriate issues here. The jury instructions as a whole were completely accurate. They did not weaken, much less obviate, the requisitions of the court. In this case, Greer's jury was instructed that they could not convict him unless, first, the defendant attempted to induce the casinos to part with money or property by wrongful use of fear of economic harm, and, second, that the defendant acted with the intent to obtain money from the casinos that the defendant knew he was not entitled to receive. That instruction is correct, isn't it? Pardon me? That instruction is correct. It's eminently correct, Your Honor. But the problem is, then, another instruction was given saying that he didn't have to know that it was wrong. Well, Your Honor, the Ninth Circuit model instruction 5.6 sets out a general knowingly requirement. But that's for — that's by use of force. No, Your Honor. By heading, it is. Right. The general model instruction 5.6, which says that the government is not required to prove the defendant knew his actions were unlawful, is — that is a general knowingly instruction that's controlled by the specific Hobbs Act 1951 instruction, which clearly and unequivocally states that you can't convict them unless he, quote, acted with the intent to obtain money from the casinos that the defendant knew he was not entitled to receive. Do you have a single case involving both a specific instruction, such as was given here, and a general instruction, such as was also given here? Your Honor, I am not aware of a controlling case that speaks to that. Isn't Sturm right on point? Sturm is right on point, Your Honor. And in Sturm, our jury instructions that were given to Greer's jury cleared up the very defect that the Sturm court articulated. In Sturm, the judgment was, quote, vacated because the trial judge did not instruct the jury that in order to convict the defendant of attempted extortion, it would have to find that Sturm knew he was not legally entitled to a fee to help the savings bank recover the logbooks, end quote. And here didn't the general instruction say he didn't have to know it was wrong, same as Sturm? Your Honor, the specific instruction in our case, that Greer act with the intent to obtain monies that the defendant knew he was not entitled to receive, obviates the very question that the Sturm court was forced to reverse and remand upon. But the general knowingly instruction was given in our case, but there's no evidence the jury was in any way confused by a conflict. They asked a question after their deliberations commenced about what does wrongful use of economic harm mean. They asked no question, and the record has no evidence in it that suggests in any way that the jury was confused by any sort of conflict between the specific requirement and the general. That question that they asked for me, my recollection was that they wanted to know about knowing also. No, Your Honor, the jury came back and asked what does the word wrongful mean? Can you give us an example? That's an excerpt of record 622. And in response, the district court came back with a Ninth Circuit, pardon me, a Seventh Circuit model instruction that says the wrongful use of fear means that the defendant had no lawful right to obtain the money in that way. So our jury ---- But that doesn't tell him that he had to know it was wrongful. No, Your Honor. The prior instruction that was given on page ---- I understand that. But here we have two conflicting instructions. Do you agree with that? Your Honor, I agree that the knowingly requirement in our model instruction 5.6 in an argument that was not objected to below could be read to conflict with excerpts of record 549, which specifically with regards to count 1 and 2 of the superseding indictment, the two Hobbs Act convictions, the only convictions that are at issue on this appeal, that instruction says you cannot convict them on these two counts unless you show that the defendant acted with the intent to obtain money from the casinos that the defendant knew he was not entitled to receive. I can theorize that the jury might have been confused by the Ninth Circuit model 5.6 instruction unknowingly, but there's no evidence of any confusion in the record. Well, isn't ---- doesn't this all take to the other side? You don't have to know that there's a statute that says that you don't ---- a Federal statute that says that you can't do this. Isn't that what ---- when you take it all together? Yes, Your Honor. It means that you know that you're not entitled to do this, and you are acting knowingly, knowing exactly what you're doing and that you're trying to get money that you're not entitled to. You don't have to know that it's ---- isn't the word unlawful? That's correct. Not wrongful, but unlawful? That's correct. In the statute, Your Honor, it's quite correct. And again, this is ---- Well, what is it in the instruction? The jury instruction that requires the defendant attempt to induce the casinos to part with money or property by wrongful use of fear of economic harm to harass entertainment or MGM mirage. Right. So I don't believe the word unlawful is used in the instruction itself. Not in the knowingly instruction? The knowingly instruction says an act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident. The government is not required to prove that the defendant knew that his actions were unlawful. Yes. That's completely wrong in this case, that instruction. As applied to Counts 1 and 2, it's ---- Well, the rest of the counts fall with 1 and 2, don't they? Well, no. To use in Counts 5 and 6 an interstate communications facility to break the law, you would ---- the government, to achieve convictions on that, would not have to prove that the defendant knew his actions were unlawful. It would be perfectly appropriate there. Unfortunately, Model Instruction 5.6 was not circumscribed not to apply to Counts 1 and 2. However, no objection was made at the time. We, therefore, reviewed this for plain error. And, again, as this Court pointed out in Fraga, the overarching issue is whether the instructions as a whole are misleading or inadequate to guide the deliberations. And there's no evidence in the record that these were. Everything articulated in Sturm was given by these jury instructions. And not only that, if you look at the totality of the evidence in this case, we have a defendant who has absolutely no preexisting relationship with any of the casinos from whom he is trying to get this money. He refuses, as Judge Bybee pointed out, to tell Ms. French that he found documents. He spun this grass seed analogy. When he called the casinos, he refused to give his name. He refused to state his truthful occupation. He refused to state the nature of the supposed leak in the ---- And when he decided to deal, he openly did, gave them his name, number, everything, openly talked to them, negotiating. He obviously didn't think then he was doing anything wrong, did he? I'd respectfully disagree with Your Honor's characterization. He concealed his name. He said his name was Jeff. No, no. This is when you're talking about when he first called. When he went to collect his money and entered into the contract, he didn't show up by some other person or by telephone. He went in and met with them openly and told them what he had. Honestly, it was indifferent from what he said before. That is correct, Your Honor. The night before the meeting at which he was to be arrested, he finally did come clean to Mr. Urban. And when he went in to collect his $250,000 security check and security consulting check and $100,000 World Series of Poker stipend, at that point, he did admit he was a trucker and he had simply found these documents. I see that my time is up, and we urge the Court to affirm the judgment and conviction. Thank you. Two points real fast. In his post-arrest statements, Greer told the FBI, the arresting officers, I had no idea that what I was doing was illegal. Secondly, that in Strom is the controlling case here, and I'll note the exact same instructions that were given in Strom were given in this case, General Hobbs, ER 549. Ignorance of the law is not an excuse instruction, 556. And when the jury asks about wrongful, which this whole appeal is about, the Court gives them a claim of right instruction, which is found on 624, which eliminates any need for a mental state requirement. And I note that the Strom Court was very concerned about that, that the claim of right instruction in conjunction with the other instructions misled the jury into believing that wrongful does not require a mental state requirement. And, Your Honor, Greer, he has no felony convictions. This is a very odd case. Thank you. I'm just urging you. Maybe it's your time. The case just argued is submitted for decision.
judges: Panner, Schroeder, Bybee